# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **STEPHEN JONES,** *et al.* | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil Case No.: SAG-25-02445** |
| **PERDUE FARMS INC.,** *et al.* | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiffs Stephen Jones and Richard Renshaw (collectively, "Plaintiffs") bring this action pursuant to the Resource Conservation and Recovery Act ("RCRA") against Defendants Perdue Farms Inc., Perdue Agribusiness LLC, and Perdue Foods LLC (collectively, "Defendants"). ECF 4. Defendants jointly filed a motion to dismiss the claims against them, or in the alternative to strike the complaint in part, or in the alternative to stay the case, ECF 19, which Plaintiffs jointly opposed, ECF 23. Defendants then jointly filed a reply. ECF 27. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, Defendants' motion will be granted in part and denied in part.

## I.    BACKGROUND

The following facts are derived from Plaintiffs' amended complaint, ECF 4, and are assumed to be true for purposes of this motion.

Defendant Perdue Agribusiness LLC and Defendant Perdue Foods LLC, which are both subsidiaries of Defendant Perdue Farms Inc., own and operate an agribusiness facility located in Salisbury, Maryland (the "Salisbury Facility"). *Id.* ¶ 30. A small stream, Peggy Branch, originates at the Salisbury Facility, and another stream that eventually discharges into Peggy Branch, Middle

Neck Branch, borders it. *Id.* ¶¶ 4, 40. Plaintiffs each reside within one mile of the Salisbury Facility on property adjacent to Peggy Branch. *Id.* ¶¶ 18–19.

Per- and polyfluoroalkyl substances ("PFAS") are a category of chemical compounds that include perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonic acid ("PFOS"), and perfluorohexane sulfonic acid ("PFHxS"). *Id.* ¶ 38. PFAS are resistant to biodegradation and remain in the environment and the human body long after their disposal, consumption, or absorption. *Id.* ¶ 64. PFAS are associated with various health risks to humans and adverse effects on the environment. *Id.* ¶¶ 67, 74.

Plaintiffs allege that Defendants are disposing of solid waste containing PFAS at the Salisbury Facility and that those chemicals are contaminating the area's groundwater and surface water. *Id.* ¶ 2. Specifically, they allege that Defendants spray irrigate the site with wastewater containing PFAS, store contaminated wastewater in lagoons on site, excavate and dispose of contaminated soil and dredge spoil without a permit, and dispose of foam used for fire suppression that contains PFAS. *Id.* ¶¶ 44–45, 50–51.

Testing of the groundwater at the Salisbury Facility revealed PFAS levels significantly above the safe drinking water levels promulgated by the Environmental Protection Agency ("EPA"). *Id.* ¶ 48. Groundwater flows west from the Salisbury Facility toward Plaintiffs' residences and has contaminated private wells in the area, including Plaintiffs'. *Id.* ¶¶ 55–56. Testing of the drinking well water at Plaintiffs' properties has revealed concentrations of PFOA, PFOS, and PFHxS well above the respective maximum contaminant level for each chemical promulgated by the EPA under the Safe Drinking Water Act. *Id.* ¶¶ 22–24. In total, water from 112 wells in the area contain at least one PFAS chemical in an amount that exceeds the safe drinking water level promulgated by the EPA for that chemical. *Id.* ¶ 57.

In addition to affecting their drinking well water, Plaintiffs allege that Defendants' conduct harms their "recreational, aesthetic, and/or commercial interests." *Id.* ¶ 8. Plaintiffs further allege that PFAS harm aquatic life, such as fish and shellfish, and that the concentrations of PFOA and PFOS in Middle Neck Branch and Peggy Branch are approximately one thousand times greater than the level the EPA has deemed safe for human consumption of fish and shellfish. *Id.* ¶¶ 8, 84–85.

The Maryland Department of the Environment ("MDE") implements RCRA in Maryland and has commenced an ongoing investigation into PFAS contamination at the Salisbury Facility. *Id.* ¶¶ 31, 47.

The following facts are derived from declarations filed in connection with the instant motion and appear to be undisputed. Defendants have supplied free bottled water to both Plaintiffs since late 2024. ECF 19-4 ¶¶ 3–5. Defendants have also offered to install point of entry treatment ("POET") systems on private wells in the affected area to treat the well water. ECF 19-2 ¶¶ 3–4. Such a system has been installed on Plaintiff Jones's well, while Plaintiff Renshaw has declined the offer to have a POET system installed on his well. *Id.* ¶¶ 6–7. Periodic testing of Plaintiff Jones's well water since installation of the POET system has shown non-detectible levels of the tested PFAS. *Id.* ¶ 8. Defendants have agreed to maintain the POET system through 2029 and have made no commitments past that time. ECF 23-2 ¶¶ 17–18. POET systems cannot protect users from contamination that has already passed the point of entry and been absorbed into piping. *Id.* ¶ 20.

Before filing this lawsuit, Plaintiffs sent a notice of intent to sue letter as required under § 6972(b)(1)(A). ECF 1-2.

## II.    LEGAL STANDARD

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

## III.    DISCUSSION

Plaintiffs bring this lawsuit pursuant to the citizen suit provision of RCRA. *See* 42 U.S.C. § 6972. Section 6972(a)(1)(A) permits a plaintiff to bring suit based on an alleged "violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to [RCRA]." Section 6972(a)(1)(B), in turn, permits a plaintiff to bring suit against a person who has contributed to "the past or present handling, storage, treatment,

transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."

Plaintiffs bring Counts I, II, and III under § 6972(a)(1)(A). Count I alleges a general violation of RCRA's prohibition on open dumping found in 42 U.S.C. § 6945(a). ECF 4 at ¶¶ 86–94. Counts II and III allege more specific violations of that open dumping prohibition as implemented by regulations. *Id.* ¶¶ 95–110. Count IV alleges imminent and substantial endangerment under § 6972(a)(1)(B). *Id.* ¶¶ 111–17. Plaintiffs seek civil penalties and declaratory and injunctive relief in the form of an order that Defendants eliminate and remediate the allegedly unlawful conduct and its effects on the public and the environment. *Id.* ¶¶ 118–24.

### A. Notice

Defendants first argue that Counts I, II, and III must be dismissed because Plaintiffs failed to provide sufficient notice of the alleged violations before filing suit. At least sixty days before filing a suit based on § 6972(a)(1)(A), the plaintiff must give the alleged violator notice of the alleged violation. 42 U.S.C. § 6972(b)(1)(A)(i)–(iii). The "notice and 60–day delay requirements are mandatory conditions precedent to commencing suit under the RCRA citizen suit provision." *Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989). In considering an "identical" statutory notice requirement under the Clean Water Act, the Fourth Circuit concluded that courts must construe the notice requirements as "strict and specific" but avoid an "overly technical application" of them. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 400–01 (4th Cir. 2011).

Notice before filing a § 6972(b)(1)(A) suit must include "sufficient information to permit the recipient to identify" (1) "the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated"; (2) "the activity alleged to constitute a violation"; (3)

"the person or persons responsible for the alleged violation"; (4) "the date or dates of the violation"; and (5) "the full name, address, and telephone number of the person giving notice." 40 C.F.R. § 254.3(a). Defendants challenge the sufficiency of the notice only with respect to the first and fourth requirements, which this Court will address in turn.

In the Fourth Circuit, a plaintiff may satisfy "the date or dates of the violation" requirement by alleging ongoing violations. *Sherrill v. Mayor of Balt.*, 31 F. Supp. 3d 750, 769 (D. Md. 2014), *vacated on other grounds sub nom.*, *Goldfarb v. Mayor of Balt.*, 791 F.3d 500 (4th Cir. 2015) (quoting *Potomac Riverkeeper, Inc. v. Marcella M. Klinger, LLC*, Civ. No. JKB-13-801, 2013 WL 5505397, at *5 (D. Md. Oct. 1, 2013)). Plaintiffs' notice alleged ongoing violations: "Perdue has disposed and released, and is continuing to dispose and release Forever Chemicals into the environment through at least five major pathways." ECF 1-2 at 3. The notice therefore satisfies "the date or dates of the violation" requirement.

As for the "the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated" requirement, the notice here alleged that Defendants' actions "constitute[] Open Dumping in violation of 42 U.S.C. § 6945 and its implementing regulations." ECF 1-2 at 6. The complaint, however, cited more specifically to two of those implementing regulations, 40 C.F.R. § 257.3-3(c) and 40 C.F.R. § 257.3-4(a). Defendants argue that the notice had to cite to those specific implementing regulations, while Plaintiffs counter that their reference to § 6945 sufficed.

Some courts have concluded that citing to the open dumping provision alone suffices. *See, e.g.*, *Hackensack Riverkeeper, Inc. v. Del. Ostego Corp.*, 450 F. Supp. 2d 467, 480–81 (D.N.J. 2006). Others have concluded that a plaintiff must cite a regulation implementing the open dumping provision. *See, e.g.*, *Brod v. Omya, Inc.*, 653 F.3d 156, 169 (2d Cir. 2011). Defendants

also direct this Court to *Blumenthal Power Co. v. Browning-Ferris, Inc.*, in which a court in this district concluded that a notice that cited generally to *all* of RCRA's hazardous waste provisions was insufficient. No. 94CV2612, 1995 WL 1902124, at *4 (D. Md. Apr. 19, 1995). However, the court stated in dicta that the notice "needed to refer to specific sections of RCRA." *Id.* The notice here did so in referring to the open dumping provision in § 6945.

Although no controlling precedent squarely addresses this issue, the parties agree that the purpose of the notice is to "give[] the alleged violator 'an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit.'" *Hallstrom*, 493 U.S. at 29 (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 60 (1987)); *see also Gaston Copper Recycling*, 629 F.3d at 400 ("Notice given by a citizen plaintiff under the Clean Water Act thus must provide the alleged violator with enough information to attempt to correct the violation and avert the citizen suit.").

Accordingly, this Court will consider whether the notice alleged each violation with sufficient specificity to provide Defendants an opportunity to correct them. As noted above, the complaint alleges a violation of 40 C.F.R. § 257.3-4(a), which provides, in pertinent part, "A facility or practice shall not contaminate an underground drinking water source beyond the solid waste boundary." The notice alleged that "Perdue discharges the PFAS contaminated wastewater to Peggy's Branch, a small stream originating at the Perdue Plant that leaches the Forever Chemicals into the soil and groundwater, negatively impacting downgradient drinking water wells and surface water quality." ECF 1-2 at 3. The notice therefore made clear that Plaintiffs alleged contamination of "underground drinking water source[s] beyond the solid waste boundary" in the form of PFAS contamination of downgradient drinking water wells. Thus, even without citing

§ 257.3-4(a), the notice alleged conduct that violates that regulation and provided Defendants with sufficient information to correct that alleged violation.

The complaint also alleges a violation of 40 C.F.R. § 257.3-3(c), which provides, "A facility or practice shall not cause non-point source pollution of waters of the United States that violates applicable legal requirements implementing an areawide or Statewide water quality management plan that has been approved by the Administrator under section 208 of the Clean Water Act, as amended." The complaint further identifies several state statutes and regulations allegedly violated by Defendants' discharge of non-point source pollutants without a discharge permit. *See* ECF 4 ¶ 100. Although the notice did not reference an areawide or statewide water quality management plan or the state statutes and regulations implementing it, in substance, it alleged the same conduct that violates those legal requirements. Specifically, the notice alleged that Defendants are polluting waters by discharging pollutants without a permit to do so. ECF 1-2 at 2, 3, 6. That allegation provided Defendants with sufficient information to correct the alleged violation. Accordingly, Plaintiffs provided sufficient notice before filing this lawsuit.

### B.  Standing

Defendants next contend that Plaintiffs lack standing. Standing requires a plaintiff to show (1) injury in fact, (2) that is caused by the conduct of the defendant, and (3) that is likely redressable by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A defendant may challenge standing at the motion to dismiss stage either facially or factually. *Wikimedia Found. v. NSA*, 857 F.3d 193, 208 (4th Cir. 2017). A facial challenge asserts that the facts in the complaint, even if true, fail to establish standing, whereas a factual challenge asserts that the facts in the complaint that pertain to standing are not true. *Id.* In a factual challenge, the court may look beyond the complaint. *Id.*

1. **Facial Challenge**

In their facial challenge, Defendants contend that the complaint fails to allege injury particular to Plaintiffs based on harms to the environment. "The relevant showing for Article III standing is not injury to the environment but injury to the plaintiff." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 169 (2000). For example, in *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, the plaintiffs adequately pled standing by alleging that the defendant's conduct interfered with their ability to participate in specific activities, such as fishing, hiking, and birdwatching, in the affected area. *Id.* at 182–83. In contrast, allegations that a defendant's conduct has interfered with a plaintiff's general interests, unaccompanied by more specific facts, will not suffice to plead standing. *See Richardson v. Mayor of Balt.*, Civ. No. RDB-13-1924, 2014 WL 60211, at *4 (D. Md. Jan 7, 2014). For example, in *Richardson v. Mayor & City Council of Baltimore*, the plaintiffs alleged:

> The Plaintiffs live near the Middle Branch of the Patapsco River (the "River"). They regularly use and recreate on and around the River and desire to do so in the future. The quality of the River and the water system of which it is a part directly affects the agricultural, health, recreational, aesthetic, property, and/or environmental interests of the Plaintiffs.

*Id.* The court concluded that these allegations, which described "neither the nature nor type of planned use," were conclusory and failed to plead standing. *Id.*

Plaintiffs' allegations are nearly identical to those in *Richardson*. Plaintiffs similarly allege that they live near Peggy Branch but do not allege with any specificity the nature or type of their use of it (aside from drinking water, which this Court addresses below regarding Defendants' factual challenge). Instead, they merely allege that Defendants' conduct harms their "recreational, aesthetic, and/or commercial interests." This general allegation, particularly its use of "and/or,"

like in *Richardson*, fails to describe with sufficient specificity how Plaintiffs use or plan to use the affected area and what injury they suffer as a result.

This Court therefore concludes that Plaintiffs have failed to demonstrate that they possess standing to seek relief based on harms to the environment. Accordingly, if Plaintiffs wish to pursue such relief, they must seek leave to amend their complaint.

### 2. Factual Challenge

In their factual challenge, Defendants argue that Plaintiffs lack standing with respect to any relief relating to their drinking water because Defendants have offered Plaintiffs POET systems to decontaminate their drinking water and have supplied them with bottled water. More specifically, Defendants contend that Plaintiff Jones lacks standing because he has accepted installation of a POET system that has lowered the PFAS in his drinking water to non-detectable levels, and Plaintiff Renshaw lacks standing because he has refused installation of such a POET system.

Although some courts have concluded that a defendant's offer of a full refund of all of a plaintiff's alleged losses before a lawsuit commences deprives the plaintiff of standing, an offer of less than "complete relief" does not defeat standing. *See Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1137–38 (D. Minn. 2016) (collecting cases); *cf. Greisz v. Household Bank (Ill.), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999) (noting that after a lawsuit commences, refusal of an offer of complete relief moots a claim, while refusal of an incomplete offer does not). Here, Defendants have offered Plaintiffs less than "complete relief." Defendants have committed to maintaining any installed POET system only through 2029, and even while maintained, POET systems cannot protect users from contamination that has already passed the point of entry and been absorbed into piping. ECF 23-2 at ¶¶ 17–18, 20. Plaintiffs' requested relief includes remediating "all offsite impacts to groundwater," relief that is greater than the temporary and incomplete offers that

Defendants have made. ECF 4 at ¶ 118. Thus, Defendants' remediation efforts have not deprived Plaintiffs of standing with respect to relief related to their drinking water.

### C. Count I

Turning now to the merits, Defendants first contend that Count I should be dismissed because it merely duplicates Counts II and III. Count I alleges a violation of RCRA's open dumping prohibition under 42 U.S.C. § 6945(a). Counts II and III both allege violations of regulations implementing that prohibition on open dumping. Indeed, both counts describe the allegedly violative conduct in terms of the open dumping prohibition. *See* ECF 4 at ¶¶ 97, 105 ("A facility or practice violates the RCRA open dumping prohibition if it . . . ."). Thus, Count I is merely a general description of Counts II and III, rather than a cause of action independent of them. However, Rule 8 expressly permits a party to plead in the alternative. Fed. R. Civ. P. 8(d)(2). Although this Court agrees with Defendants that Count I is duplicative, it perceives no reason to dismiss the claim on that basis at this stage. The motion to dismiss Count I will be denied.

### D. Count II

Defendants next contend that Count II must be dismissed. This claim alleges a violation of 40 C.F.R. §257.3-3(c), which prohibits causing "non-point source pollution of waters of the United States that violates applicable legal requirements implementing an areawide or Statewide water quality management plan that has been approved by the Administrator under section 208 of the Clean Water Act, as amended." The complaint alleges that Maryland has adopted an applicable areawide or Statewide water quality management plan and that Defendants have violated several Maryland statutes and regulations by discharging PFAS into Peggy Branch and Middle Neck Branch without a discharge permit. *See* ECF 4 ¶¶ 98, 100. Defendants contend that these allegations are insufficient because Plaintiffs have not specified a water quality management plan

or explicitly alleged that the statutes and regulations cited constitute "legal requirements implementing an areawide or Statewide water quality management plan" under 40 C.F.R. §257.3-3(c).

This Court concludes that Plaintiffs have adequately pled this claim. The complaint contains both factual allegations (that Defendants are discharging pollutants into waters of the United States without a discharge permit) and the specific legal requirements allegedly violated by that conduct (the Maryland statutes and regulations). Furthermore, the complaint makes clear, even if implicitly, that Plaintiffs allege that those statutes and regulations constitute "legal requirements implementing an areawide or Statewide water quality management plan." The allegations in the complaint therefore gave Defendants sufficient notice of the facts underlying the claim and the legal basis for relief. If Defendants believe that that legal basis for relief is flawed because the Maryland statutes and regulations do *not* constitute "legal requirements implementing an areawide or Statewide water quality management plan," they may argue, later in the proceeding, that the claim fails for that reason. However, Plaintiffs have not failed to state the claim by failing to include a legal argument to the contrary in their complaint. Accordingly, this Court will deny the motion to dismiss Count II.

### E. Count III

Defendants next argue that Count III must be dismissed. Count III alleges a violation of 40 C.F.R. § 257.3-4(a), which prohibits "contaminat[ing] an underground drinking water source beyond the solid waste boundary or beyond an alternative boundary." "Contaminate" within the meaning of this regulation means:

> [I]ntroduce a substance that would cause: (i) The concentration of that substance in the ground water to exceed the maximum contaminant level specified in appendix I, or (ii) An increase in the concentration of that substance in the ground water

where the existing concentration of that substance exceeds the maximum contaminant level specified in appendix I.

40 C.F.R. § 257.3-4(c)(2). Appendix I does not list a maximum contaminant level ("MCL") for any of the PFAS alleged in the complaint. 40 C.F.R. § 257, App. I. Defendants argue that because no PFAS are listed in appendix I, they cannot constitute substances that "contaminate" within the meaning of § 257.3-4(a).

This Court agrees. The text of § 257.3-4(c)(2) is clear that contamination requires concentration of a substance beyond its MCL in appendix I. If no MCL is listed in appendix I, as none is for any PFAS, then contamination within the meaning of § 257.3-4(a) cannot occur. *See Living Lands, LLC v. Cline*, 657 F. Supp. 3d 831, 845 (S.D.W. Va. Feb. 21, 2023) (rejecting claim based on chemical not listed in appendix I because defendant "cannot have caused an exceedance of an MCL that does not apply"). Although Plaintiffs argue that the EPA has promulgated MCLs for PFAS, those MCLs are not delineated in appendix I, so they cannot support a claim of contamination under its plain meaning in § 257.3-4(a). Thus, this Court must dismiss Count III.

**F.  Count IV**

Defendants also seek to dismiss Count IV, which alleges imminent and substantial endangerment under § 6972(a)(1)(B). To satisfy the imminence requirement under this provision, there must exist a present threat, even if harm from the threat may not manifest until later. *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 485–86 (1996). Defendants note that many courts have concluded that contamination, including in drinking water, alone does not constitute imminent and substantial endangerment. *See Courtland Co. v. Union Carbide Corp.*, Civ. No. 2:18-cv-01230, 2023 WL 6331069, at *98 (S.D.W. Va. Sept. 28, 2023) (collecting cases). More specifically, allegations of contaminated drinking water cannot support an imminent and substantial endangerment claim if plaintiffs do not also allege that they are actually drinking the water. *Warren v. Matthey*, Civ. No.

15-01919, 2016 WL 215232, at *7 (E.D. Pa. Jan. 19, 2016) (collecting cases and concluding that "conclusory" allegation that contaminated drinking water posed an imminent and substantial endangerment to the plaintiffs' health was insufficient given that the plaintiffs had failed to allege that they were drinking the water).

Plaintiffs did not allege in their complaint that they are currently drinking the contaminated water. Furthermore, although Plaintiffs allege harm to the surrounding environment as a result of the contamination, this Court has already concluded that they lack standing to bring claims based on that alleged environmental harm. Accordingly, Plaintiffs have failed to allege a claim for imminent and substantial endangerment. Because this Court will dismiss Count IV, it need not address Defendants' request in the alternative to strike certain allegations from that count.

### G. Motion to Stay

Finally, Defendants ask in the alternative that this Court stay this lawsuit pending completion of the ongoing MDE investigation. This Court recently denied a nearly identical motion for a stay in another case based on the same alleged conduct by Defendants at the Salisbury Facility. *See Chaney v. Perdue Farms Inc.*, Civ. No. SAG-24-02975, 2025 WL 2323227, at *6 (D. Md. Aug. 12, 2025). This Court reasoned that that case would proceed to discovery, during which this Court was unlikely to make any rulings that might conflict with any determinations made by MDE during its investigation. *Id.* This Court also noted that both the timing of the MDE investigation and the scope of any potential relief from it remained unclear. *Id.* The same reasoning applies to this case. Although Defendants seek to distinguish *Chaney* by noting that the plaintiffs in that case had requested certain forms of relief, such as medical monitoring, that would not result from the MDE investigation, it remains true that the scope of potential relief from the MDE investigation remains unclear. This Court perceives no persuasive reason to prevent this case from

proceeding to discovery while awaiting the completion, at an unknown time in the future, of an investigation that may not ultimately duplicate the relief requested in this case. This Court will therefore deny the motion to stay at this juncture, but Defendants may re-raise it if appropriate as both this case and the investigation proceed.

### IV.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss, strike, or stay, ECF 19, will be granted in part and denied in part. Counts III and IV will be dismissed, and the case will proceed, without a stay, as to Counts I and II and relief relating to Plaintiffs' drinking water only. A separate Order follows.


Dated: January 8, 2025                                  _____/s/_____
                                                        Stephanie A. Gallagher
                                                        United States District Judge